Application of Irby Cullen **JONES,**
**Jr., et al.**
**Patent Appeal No. 8864.**

United States Court of Customs
and Patent Appeals.
May 3, 1973.

Glwynn R. Baker, Midland, Mich.,
Atty., of record, for appellants. Stephen
Hoynak, Midland, Mich., of counsel.

S. Wm. Cochran, Washington, D. C.,
for the Commissioner of Patents. Fred
E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH,
BALDWIN and LANE, Judges, and
WATSON, Judge, United States Customs
Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the
Patent Office Board of Appeals, adhered
to on reconsideration, affirming the rejection of claims 1, 2, 3 and 5 of appellants' application serial No. 562,476, filed
July 5, 1966, entitled "Method of Extracting Dissolved Ingredients from a
Slurry," for obviousness under 35 U.S.C.
§ 103. We affirm.

The method of extracting dissolved ingredients from a slurry claimed by appellants comprises in general the following steps: continuously passing the slurry into the upper portion of an open column, effecting a countercurrent flow of
an extraction liquid, removing from the
lower portion a slurry free of one solute,
and removing from the upper portion a
liquid containing the solute. Claim 1
reads (paragraphing ours):

> 1. A method of extracting dissolved ingredients from a slurry of a
> solid and a fluid containing solute dissolved therein comprising
>
> continuously passing said slurry into
> the upper portion of an open column
> having no structural elements to obstruct the free fall of slurry,
>
> effecting continuous, counter-current, non-turbulent flow in said column of an extraction liquid which is
> miscible with, and a solvent for at least
> one solute contained in, the fluid of
> said slurry,
>
> removing from a lower portion of
> said column a slurry substantially free
> of at least one solute contained in the
> slurry entering the said column and,
>
> removing liquid containing the extracted solute from said column at a
> point above the entry point of said
> slurry and at a rate greater than the
> feed rate of said extraction liquid into
> the column.

The other appealed claims depend from
claim 1 and add that the slurry is aqueous and the extracting liquid is water,
or that the slurry contains NaOH and
NaCl, or that the method is carried out
at ambient temperature and pressure.
Appellants' application does not illustrate any extraction apparatus but in
example it describes an open column 24
feet, 3¾ inches long and 1.99 feet in diameter with a drain to remove extracting
fluid as it overflows from the column,

with a slurry feed line extending downward 2 feet, 9 inches into the top of the column, and with an extraction liquid feed line extending to a sparger about 15 inches from the bottom of the column. The column bottom is described as conical in shape and connected to a valved line used to control the flow rate of slurry therethrough. In other examples, the specification describes the use of a glass column 4 inches inside diameter and 10 feet high with feed lines and valves, and the use of a column having an inside diameter of about 6 inches and 23 feet high. The appealed claims do not recite these specific structural details.

The references relied on by the board and the only ones we need consider are:

| Barnard et al. (Barnard) | 3,278,275 Oct. 11, 1966 (on an application filed Feb. 14, 1963) |
|---|---|
| Goerg | 3,309,177 Mar. 14, 1967 (on an application filed Aug. 5, 1963) |

---

Barnard discloses a process for removing sodium hydroxide from a sodium hydroxide slurry. The specification states that an aqueous slurry of salt and caustic is fed into the top of a column, that water is supplied to the bottom of the column, and that an aqueous salt solution containing substantially all of the caustic of the original slurry feed mixture is removed from the top of the column. The column illustrated in Barnard includes a plurality of transverse trays each of which supports a number of vertical riser tubes and has a number of downcomer holes therein.

Goerg discloses apparatus for countercurrent washing of solids with liquids. The apparatus includes a vertically mounted column into which the mother liquor is introduced at the top. The column is provided in its lower portion with an inlet for the washing liquid. There is a discharge conduit near the top for removing solid-free mother liquor and washing liquid. There is a discharge conduit at the bottom for the removal of solid materials and washing liquid. The Goerg apparatus includes a perforated transverse plate called a settling bottom. Goerg contemplates using the apparatus to remove impurities from sodium chloride slurries.

The board found that Goerg uses an essentially unobstructed tower and that the rising aqueous wash liquid displaces the mother liquor via an upper discharge conduit. The board held that since the Goerg process accomplishes the same result as appellants' method, any agitation is immaterial and found that appellants' method provides at least some degree of agitation at the point of entry of the wash water. The board found that appellants had merely omitted the Goerg transverse plate and its function and concluded that Goerg and appellants both displace the mother liquor by a rising flow of aqueous wash liquid.

Appellants contend that their method requires the use of an open column which is free of obstructions such as plates or baffles and requires nonturbulent flow. The Goerg apparatus provides a vertical wash vessel in which there are no baffles, plates or other structural elements projecting inwardly from the inner surface of the column wall in that portion of the vessel between the upper inlet opening and the "sprinkler-like distributor" through which the washing liquid is introduced. We do not find the presence of the settling bottom in the Goerg apparatus to render appellants' claimed subject matter nonobvious, assuming that such a structure is precluded from appellants' claims. It appears that Goerg intended nonturbulent flow, and although appellants allege that the Goerg process would have turbulent flow, they have pro-

vided neither explanation nor evidence tending to support such a contention. We agree that it would have been obvious to omit the settling bottom and lose whatever advantages might flow from its use. The distributor in Goerg corresponds to the "sparger" described by appellants, and it is concluded that there is no difference in agitation of the liquids in the absence of evidence to the contrary.

Appellants' contention that the art does not show removal of the liquid containing the extracted solute from the column at a point above the entry point of the slurry is not sound. Goerg teaches provision of an upper inlet opening which extends below the upper discharge conduit so that slurry enters the vessel below the conduit through which extracted solute is discharged. Appellants also contend that Barnard does not teach removal of the liquid containing the extracted solute at a rate in excess of the rate at which water is introduced into the open column. The Barnard drawing discloses the introduction of water at the top of his column at the rate of 182.7 pounds per minute, the removal of water at the bottom of the column at the rate of 75.8 pounds per minute, and the introduction of the wash water at the bottom of the column. The aqueous salt solutions removed from the top of the column include the difference between 182.7 and 75.8, or 106.9 pounds of water per minute in excess of the flow of wash water into thé bottom of the column.

It is concluded that the disclosures of Goerg and Barnard make out a persuasive case of obviousness. While the board decisions do not specifically mention the affidavit of record asserting commercial success and fulfillment of long-standing needs, we think it apparent that the bare allegations of the affidavit provide no evidentiary support for suh contentions. The decision of the board is affirmed.

Affirmed.